UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BARRY LYNN WATTERS, JR.,

                   **Plaintiff,**

v.                                                                                   Case No. 21-CV-687

**J. FREE,** *et al.*,

                   **Defendants.**

## DECISION AND ORDER

Plaintiff Barry Lynn Watters, Jr., who is representing himself and is incarcerated at Green Bay Correctional Institution, brings this lawsuit under 42 U.S.C. § 1983. Watters was allowed to proceed on Fourteenth Amendment claims against Officer J. Free, Corporal Zachary Bergh, Corporal Jeremey Nelson, and Lieutenant Michael Halasi for allegedly failing to obtain treatment for Watters's head injury. Watters was also allowed to proceed on Fourteenth Amendment claims against Nurse Emily Blozinski and Nurse Diane Jensen for failing to properly treat his head injury. The defendants filed motions for summary judgment, which are ready for resolution. (ECF No. 34, 44.) The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 4, 22, 23.)

### PRELIMINARY MATTERS

In their replies the defendants argue that the court should disregard the exhibits Watters submits with his proposed findings of fact because they are not authenticated. They also argue that the court should find that their version of the facts is unopposed

because Watters failed to follow Civil Local 56 when responding to their summary judgment motions. District courts are entitled to construe *pro se* submissions leniently and may overlook the plaintiff's noncompliance by construing the limited evidence in the light most favorable to the plaintiff. *See Grady v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). In his response brief Watters states, "I declare under penalty all enclosed documents, statements are true and correct." (ECF No. 63 at 1.) He makes a similar statement in his complaint. (ECF No. 1 at 6.) These statements, made pursuant to 28 U.S.C. § 1746, convert Watters's complaint and other submissions into affidavits for purposes of summary judgment. *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017); *Owens v. Hinsley*, 635 F.3d 950, 954–55 (7th Cir. 2011). As such, the court will consider the information contained in Watters's submissions where appropriate in deciding defendants' motions.

## STATUTE OF LIMITATIONS

Defendants Free, Bergh, Nelson, and Halasi also make an argument that Watters's claim against them is barred by the statute of limitations. They note that Watters hit his head on May 3, 2018, and Free allegedly did not call the Health Services Unit (HSU) for immediate medical care that day. (ECF No. 36, ¶ 7.) They note that Bergh, Nelson, and Halasi, whose role was limited to investigating and responding to Watters's grievances regarding Free's failure to obtain medical care, all acted between May 10 and May 14, 2018. (*Id.*, ¶¶ 8-10, ECF Nos. 41-1 through 42-3.) Watters did not file this lawsuit until June 3, 2021. (ECF No. 1.)

Because section 1983 does not contain its own statute of limitations, federal courts borrow the limitations period and tolling rules applicable to personal-injury claims under state law. *Devbrow v. Kalu*, 705 F.3d 765, 767 (7th Cir. 2013) (citing *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012)). In Wisconsin, "the applicable residual statute for § 1983 claims is Wis. Stat. § 893.53." *D'aquisto v. Love,* No. 20-c-1034, 2020 WL 5982895 at *1, (E.D. Wis. Oct. 8, 2020). During the relevant time period Wis. Stat. § 893.53 set forth a three-year limitation period. A § 1983 claim accrues on "the date that the plaintiff knew or should have known that his constitutional rights had been violated." *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006).

The grievances show that Watters believed Free violated his rights on May 3, 2018. As such, he needed to file his claim against Free by May 3, 2021. He did not, and therefore his claim against Free is barred as untimely and will be dismissed.

As for Bergh, Nelson, and Halasi, the grievances and other evidence in the record demonstrate that their actions in allegedly denying Watters's grievances took place before June 3, 2018, and he believed they also violated his constitutional rights before June 3, 2018. Therefore, his claims against them are also barred as untimely.

Even if their conduct occurred after June 3, 2018, the record demonstrates that their involvement was limited to reviewing and denying Watters's grievances. Prison officials who deny grievances "but who otherwise did not cause or participate in the underlying conduct" cannot be held liable under § 1983. *See Owens v. Hinsley,* 635 F.3d 950, 953 (7th Cir. 2011) (citing *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007)). Watters presents no evidence that Bergh, Nelson, or Halasi handled his complaints with

3

deliberate indifference or were otherwise involved in Free's failure to obtain immediate medical care. As such, Watters cannot sue Bergh Nelson, and Halasi under § 1983. *See Burks v. Raemisch*, 555 F.3d 592 (7th Cir. 2009). As such, even if Watters's claims against Free, Bergh, Nelson, and Halasi were not time-barred, he does not have a claim against them because they did not participate in the underlying conduct. Summary judgment is granted in their favor and the claims against them are dismissed.

The court will now address the merits of the remaining claims against Blozinski and Jensen.

**FACTS**

On May 3, 2018, while Watters was a pretrial detainee at the Brown County Jail, Officer Free, in what appears to be accident, hit him in the head with a metal door while he was doing a security round in the housing unit. (ECF No. 68, ¶ 2.) Watters states he suffered "intense physical pain, swelling, [and] dizziness" after being hit in the head. (*Id.*, ¶ 3.)

On either May 3 or May 4, 2018 (it is unclear from the record), Watters submitted a health services request (HSR) stating, "Today around 2:00 pm Officer Free was doing a round and hit my head with the door causing me a severe headache. I need Tylenol and do not bill me because it was an injury caused by Jail Staff." (ECF No. 48- at 12.) Blozinski responded to Watters's HSR on May 4, 2018. (ECF No. 47, ¶ 10.) She noted that HSU was not informed of the incident and scheduled Watters for the next available appointment. (*Id.*) On May 9, 2018, Watters was examined by a non-defendant nurse during which he reported "intermittent throbbing headaches . . . dizziness and

4

photophobia." (*Id.*, ¶ 11; ECF No. 48-1 at 25.) After getting approval from a non-defendant doctor, the nurse placed Watters on a pain protocol wherein Watters received 200 mg of ibuprofen once a day for seven days and a three-day blood pressure check. (ECF No. 47, ¶¶ 12-13.)

According to the defendants and the relevant medical records, Watters refused to take the ibuprofen on May 12 and May 13, 2018. (ECF No.47, ¶ 14; ECF No. 48-1 at 20.) Watters asserts that he took all medications offered from May 12, 2018, through July 15, 2019, only "rarely refusing." (ECF No. 64, ¶ 24.) He further asserts that "HSU staff including but not limited to Emily Blozinski and Diane Jensen regularly falsified official medical documents by stating I refused ALL my prescribed medication except for about 9-14 times from May 2018 through July 2019." (*Id.*, ¶ 25.) He then directs the court to "see Exhibit 26" as support for this assertion, but the court cannot discern from the record which exhibit he is referring to. Additionally, Watters provides no support for his belief that Blozinski and Jensen were falsifying medical records.

On May 20, 2018, Watters submitted another HSR stating, "I got hit in the head with a door by a officer [*sic*] and since then I been having headaches. I'm still having the headaches and it has nothing to do with my blood pressure because my blood pressure has been consistent but the headaches are still happening." (ECF No. 47, ¶ 15; ECF No. 48-1 at 11.) A non-defendant nurse responded to Watters's HSR, informing him he would have the next available appointment with someone in the HSU. (ECF No. 47, ¶ 16.)

On May 28, 2018, a non-defendant nurse examined Watters, who reported symptoms similar to those he was experiencing on May 9. (ECF No. 47, ¶ 17.) After

5

getting approval from a non-defendant Jail physician, the nurse placed Watters on another pain protocol: two 325 mg tablets of Tylenol for seven days. (*Id.*, ¶¶ 18-19.) According to the defendants and the medical records, Watters refused to take the Tylenol on the morning of May 30, May 31, June 4, and June 5, 2018. (*Id.*, ¶ 20; ECF No. 48-1 at 19-20.) Jensen was the nurse who was distributing medication when Watters refused the medicine on May 30, June 4, and June 5. (ECF No. 47, ¶ 20.)

On May 31, 2018, a non-defendant Jail physician met with Watters in response to an HSR on another matter. (ECF No. 47, ¶ 21.) During this exam, Watters did not mention his head injury or headaches and instead discussed his religiously-motivated hunger strike. (*Id.*)

On June 6, 2018, Watters filed another HSR, stating, "I was hit in the head with a door by Officer Free and since then I have been having headaches. I'm still having severe headaches every day." (ECF No. 47, ¶ 22; ECF No. 48-1 at 10.) Blozinski responded the next day, asking when the incident happened because she did not recall Watters's May 4 HSR. (ECF No. 47, ¶ 23.) Watters replied on the same HSR, "This happened on 5-3-18. I have been seen about this multiple times already. HSU tried to say my blood pressure was the cause and it wasn't." (ECF No. 47, ¶ 23; ECF No. 48-1 at 10.) On June 7, 2018, Blozinski scheduled Watters for the next available appointment with someone in the HSU. (ECF No. 47, ¶ 23.)

On June 12, 2018, before he could be seen in the HSU, Watters filed another HSR, stating, "I am having headaches because I was hit in the head by an officer with a door. I need to be seen to receive Tylenol." (ECF No. 47, ¶ 24; ECF No. 48-1 at 9.) Blozinski

6

responded the next day, stating that Watters was scheduled for the next available appointment with someone in the HSU. (ECF No. 47, ¶ 25.)

On June 14, 2018, Jensen examined Watters pursuant to another HSR he filed about his inability to get up on his top bunk. (ECF No. 47, ¶ 26.) During that examination Watters told Jensen he was experiencing "severe, severe migraines." (*Id.*, ¶ 27.) Jensen attempted to get more information about the migraines but reported in her medical notes that "Patient is not able to expound on this information." (*Id.*; ECF No. 48-1 at 30.) As a result of Jensen's examination of Watters, the Jail physician prescribed Watters" two Tylenol tablets a day for three days. (ECF No. 47, ¶ 28.)

On June 15, 2018, Watters submitted another HSR, stating, "This is in response to your response to my HSU slip on 6-13-18. How has there been no documentation of the incident when I was seen by HSU on 5-9-18 because of that incident and then placed on blood pressure checks to be sure that was not the cause of the headaches??? This has continued to be an issue, and I'm still having headaches." (ECF No. 47, ¶ 29; ECF No. 48-1 at 7.) Blozinski responded that there was no documentation of Watters's being hit in the head but there was documentation that he was seen for headaches. (ECF No. 47, ¶ 30; ECF No. 48-1 at 7.) She also noted that he was scheduled with the next available appointment to see the Jail physician. (*Id.*) Watters then immediately filed another HSR, informing Blozinski that he has been seen for his headaches several times and that he wrote grievances about the incident, but he still had not been seen by a doctor for his head injury. (ECF No. 47, ¶ 31; ECF No. 48-1 at 8.) Blozinski responded, "You are on to see MD. This is your choice to come to your appointment." (*Id.*)

7

On June 21, 2018, the Jail physician again examined Watters. (ECF No. 47, ¶ 32.) Watters told the doctor he was experiencing headaches, to which the doctor responded that he could receive Tylenol for his pain. (*Id.*, ¶¶ 33-34.) Watters did not request any Tylenol until June 27, 2018, at which point the Jail physician prescribed him Tylenol twice a day for seven days. (*Id.*, ¶¶ 35-36.) On July 4, 2018, the defendants assert and the medical records show that Watters refused to take the Tylenol. (*Id.*, ¶ 37; ECF No. 48-1 at 26.)

On July 10, 2018, the Jail physician examined Watters for his head injury a second time. (ECF No. 47, ¶ 38.) Watters told the doctor he was still having headaches, so the doctor proscribed him a stronger headache medicine—propranolol—for 90 days. (*Id.*, ¶ 40.) The defendants assert, and the medical records confirm, that Watters refused the propranolol 38 times during the 90-day period. (*Id.*, ¶ 41; ECF No. 48-1 at 13-17.) Jensen was distributing medication on 13 of those occasions, and Blozinski was distributing medication on 4 of the occasions. (ECF No. 47, ¶¶ 42-43.) The July 10, 2018, exam with the Jail physician is the last time in the record that Watters sought treatment for his headaches. (*Id.*, ¶ 44.)

Jensen and Blozinski state that they "did not have any authority to prescribe medication or otherwise unilaterally treat Watters's headaches. The HSU nurses only had authority to provide treatment for his condition consistent with the jail physician's orders." (ECF No. 47, ¶ 47.) Watters states that Jensen and Blozinski and other HSU staff consistently falsified records to make it appear that they were treating him and that they did not take his head injury seriously even though head injuries can cause

8

Case 2:21-cv-00687-WED   Filed 03/14/23   Page 8 of 14   Document 69

concussions that lead to death. (ECF No. 64, ¶¶ 21-23, ¶ 32-35.) Watters does not present any evidence that HSU staff falsified his medical records. Watters also does not present any evidence that he was ever diagnosed with a concussion that he suffered from any additional or lasting malady other than the headaches.

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of

9

fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Watters claims that the defendants violated his Fourteenth Amendment rights when they failed to treat his headaches. To show that the defendants violated his constitutional rights under the Fourteenth Amendment's Due Process Clause, Watters must demonstrate that (1) "he suffered from an objectively serious medical condition" and (2) "the staff's response to it was objectively unreasonable." *Williams v. Ortiz*, 937 F.3d 936, 942-943 (7th Cir. 2019). To assess objective unreasonableness, the "standard requires courts to focus on the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively—without regard to any subjective belief—whether the response was reasonable." *McCann. Ogle Cty. Ill.,* 909 F.3d 881, 866 (7th Cir. 2018). "Negligence or gross negligence does not meet this standard." *Williams*, 937 F.3d at 942-943. Also, disagreeing with a medical professional's course of treatment does not mean the course of treatment was objectively unreasonable. *Id.*

The defendants argue that Watters did not suffer from an objectively serious medical condition. Experiencing headaches over a short period of time typically does not rise to the level of a constitutional violation. *See Teen v. Hale*, Case No. 3:17-cv-916, 2019 WL 7580119 at * 3 (S.D. Ill. Oct. 15, 2019) (citing *Gayton v. McCoy*, 593 F.3d 610, 621 (7th Cir. 2010); *Smith v. Trammell,* Case No. 16-C-5946, 2018 WL 488274 at * 6 (N.D. Ill.

10

Jan. 19, 2018) (citing *Henderson v. Shehan*, 196 F. 3d 839, 846 (7th Cir. 1999). However, "a minor ailment may evolve into a serious medical need where the prisoner received inadequate treatment for 'almost a month.'" *Cashner v. Widup*, Case No. 17-1079, 2017 WL 11622116 at * 2 (7th Cir. Nov. 30, 2017) (quoting *Zentmeyer v. Kendall County, Ill.*, 220 F.3d 805, 810 (7th Cir. 2010)). In that case, headaches qualified as an objectively serious medical condition. *Id.* Watters complained about headaches that he described as intense and serious for over a month. As such, his headaches were an objectively serious medical condition.

However, no reasonable factfinder could conclude that the defendants were objectively unreasonable in their treatment of his headaches. The evidence demonstrates that every time Watters made a request for medical care he was promptly scheduled for the next available appointment in HSU, which usually occurred within a week. "[D]elays are common in the prison setting with limited resources, and whether the length of a delay is tolerable depends on the seriousness of the condition and the ease of providing treatment." *Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016). Examples of intolerable delays are failing to provide any treatment for acid reflux disease for over two months or scheduling a basic dental exam. *Id.* (citations omitted).

Also, delays in treatment are only actionable where the plaintiff "provide[s] independent evidence that the delay exacerbated the injury or unnecessarily prolonged the pain." *Petties* at 730-731. The periods between Watters's requests for treatment and his appointments were reasonable and tolerable. While Watters did wait a little more than a month to see the doctor for his head injury for the first time, the record shows

11

that Jensen and Blozinski consistently consulted with doctors about the proper course of treatment for Watters's headaches. Also, Watters produced no evidence that his pain was unnecessarily prolonged or that his injury was exacerbated as a result of any delay in seeing a doctor. The record demonstrates that, as long as he was on a pain protocol, receiving and taking his medication[1], he did not request to see health services, which implies the pain medicine was working.

Moreover, Jensen and Blozinski had no authority to decide what treatment to give Watters, that authority resting with the Jail physician. The Seventh Circuit Court of Appeals has held that nurses are entitled to rely on the judgment of the doctors they consult with. *Rice ex. rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 686 (7th Cir. 2012).

Moreover, the record shows that Jensen and Blozinski acted reasonably. Watters started on ibuprofen and, when that proved ineffective, he was switched to Tylenol. The Tylenol must have worked for a period of time because in subsequent HSRs, after his pain protocol ended, he specifically requested Tylenol. However, when Watters was still complaining about headaches after a couple of months, the doctor prescribed him propranolol, which is the next level of pain medication, up from over-the-counter pain medication such as Tylenol. Thus, this is not a case where the medical providers were "doggedly persisting in a course of treatment known to be ineffective." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (internal citations omitted). The record also indicates

---

[1] There is also evidence that Watters periodically refused his pain medication, which may have caused his headaches to return. While Watters states he never refused his pain medication, the medical records in evidence contradict this. Watters asserts that the defendants fabricated the medical records but offers no evidence of any fabrication.

that, after taking the propranolol, Watters submitted no further HSRs regarding his headaches.

Because Jensen and Blozinski consistently timely responded to Watters's HSRs, scheduled appointments as soon as possible, and modified and tried different courses of treatment after Watters's complaints, no reasonable jury could conclude that they acted unreasonably in treating his headaches. Because no reasonable factfinder could conclude that Blozinski and Jensen acted unreasonably in treating Watters's headaches, summary judgment is granted in their favor.

## CONCLUSION

For the foregoing reasons the defendants' motions for summary judgment are granted. The claims against Free, Bergh, Nelson, and Halasi are time-barred. The claims against Bergh, Nelson, and Halasi also fail on the merits. The claims against Blozinski and Jensen are dismissed on the merits. Because there are no remaining claims, the case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motions for summary judgment (ECF Nos. 34, 44) are **GRANTED.**

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rules of

Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 14th day of March, 2023.

BY THE COURT

*William E. Duffin*

WILLIAM E. DUFFIN
United States Magistrate Judge